Stephen FISCHER et al., Plaintiffs,

v.

Michael KLETZ et al., Defendants.
(and fifteen other actions consolidated therewith)

Valentine and Norton BLOCH et al.,
Plaintiffs,

and

Occidental Life Insurance Co., et al.,
Plaintiffs-Intervenors,

v.

F. Ralph NOGG, as Trustee in Reorganization for Yale Express System, Inc.,
et al., Defendants.

Israel GARBER and Anna Garber,
Plaintiffs,

v.

Fred H. MacKENSEN et al., Defendants.

Nos. 65 Civ. 787, 928, 923.

United States District Court
S. D. New York.

Dec. 8, 1966.

Pomerantz, Levy, Haudek & Block, New York City, Kaufman, Taylor, Kim-mel & Miller, New York City, for plaintiffs.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Peat, Marwick, Mitchell & Co.

Lynton, Klein, Opton & Saslow, New York City, for defendant Michael G. Kletz.

## OPINION

TYLER, District Judge.

This is a motion by defendant Peat, Marwick, Mitchell & Co. (hereinafter "PMM") under Rule 23(c) (1), F.R. Civ.P., as amended effective July 1, 1966,[1] for a determination that none of the actions entitled Fischer v. Kletz (and fifteen other actions previously consolidated therewith), 65 Civ. 787, Bloch v. Nogg, 65 Civ. 928, and Garber v. Mac-Kensen, 65 Civ. 923, are maintainable as class suits. In the alternative, defendant PMM asks that if it is decided that one or several of the actions are maintainable as class suits, the court should order plaintiffs in such actions to comply immediately with the notice requirements of Rule 23(c) (2) and (d) (2).[2]

1. New Rule 23(c) (1) provides as follows:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

All parties agree that the amended Rule governs although the actions in question were commenced prior to July 1, 1966.

2. Rule 23(c) (2) provides as follows:

"In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date;

(B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

Rule 23(d) provides, in pertinent part, as follows:

"Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: * . * * (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; * * *."

## I.

## MAINTENANCE OF A
## CLASS ACTION

Plaintiffs in these actions purchased securities of Yale Express System, Inc., during the period between August 20, 1963, and either March 8, 1965 or May 6, 1965.[3] It is their contention that various financial statements issued by the defendant Yale during this period falsely and grossly overstated figures purporting to represent the company's earnings, revenues and forecasts thereof and that, as a result, plaintiffs purchased the securities at a false and inflated value and were thereby damaged. In each case, plaintiffs assert that their action is maintainable as a class action. For purposes of the following discussion, the "class" will be deemed composed of individuals who bought Yale securities in the form of either common stock or debentures between August 20, 1963 and either March 8, 1965 or May 6, 1965. Disagreement among plaintiffs as to the precise structuring of the class or classes will be disregarded except where specifically noted and the three actions treated as one.

■ Defendant relies upon four principal grounds for contending that a class action cannot be maintained. First, it states that the class as presently defined does not meet the prerequisite of Rule 23(a) (2) that "there are questions of law or fact common to the class". Second, and closely connected with the above, PMM takes the position that, even if there are common questions of law and fact, these do not "predominate over any questions affecting only individual members", as required by Rule 23(b) (3). Third, PMM maintains that the plaintiffs have failed to satisfy the prerequisite of Rule 23(a) (4) that the repre-

sentatives of the class "will fairly and adequately protect the interests of the class". Fourth, PMM contends there is no showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy". Rule 23(b) (3), F.R.Civ. P. I shall discuss the validity of these contentions *seriatim*. It should be noted that unless each point is determined against PMM, no class action can be maintained because the provisions of amended Rule 23 under consideration here are conjunctive rather than disjunctive in form.

## A & B

## COMMON QUESTIONS OF LAW
## AND FACT AND THEIR
## PREDOMINANCE

In analyzing the issues involving common questions of law and fact, the court must adopt a two-step approach. First, Rule 23(a) (2) provides that one of the prerequisites to a class action is that there are actually "questions of law or fact common to the class". Second, if such common questions exist, Rule 23(b) (3) requires a finding that they "predominate over any questions affecting only individual members" of the class before a class action can be maintained.

■ Plaintiffs contend that the prerequisite of "common questions of law and fact" has been met although the members of the supposed class are those who bought securities over a period of nearly two years, during which time at least seven statements reflecting the financial condition of Yale were issued. PMM takes the position that "a purchaser of a Yale security in August 1963 who relied on the prospectus cannot conceivably purport to represent a purchaser who purchased a Yale security in 1965

3. In the *Fischer* action, plaintiffs maintain they are representatives of purchasers of both Yale common stock *and* Yale debentures for the period August 20, 1963 to March 8, 1965. In the Bloch action, plaintiffs allege they are representatives solely of those who bought Yale debentures between August 20, 1963 and May 6, 1965 and maintain that stock and debenture purchasers should not be in the same class. This possible conflict between plaintiffs will be adverted to infra.

on the basis of reliance on interim financial statements issued by the company in 1964" (PMM's Main Memorandum, p. 10) and maintains that liability must be considered on the basis of each individual alleged misrepresentation.

The basis for plaintiffs' argument is that the financial statements are so interrelated, interdependent and cumulative that the price at which the 1965 investor bought a Yale security was affected by the alleged misrepresentations in the 1963 prospectus. Since the 1963 and 1965 investors, in spite of their disparate temporal positions, were "harmed" by the same alleged wrongful acts of defendants, the questions of law and fact incident to such harm, say plaintiffs, are common to all purchasers.

I accept this rationale. To be sure, we are not dealing here with a single alleged fraudulent misrepresentation or the issuance of a single document containing several alleged misrepresentations. Like standing dominoes, however, one misrepresentation in a financial statement can cause subsequent statements to fall into inaccuracy and distortion when considered by themselves or compared with previous statements. Such a possible close causal relationship between the various alleged misrepresentations in the Yale financial statements leads to the conclusion that members of the class are interested in "common questions of law and fact".

In Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964), defendants asserted that various investors made payments on the securities there in question at different times and stood in different positions with respect to the representations made to them and the reasonableness of their reliance and maintained, therefore, that since questions of fact and law would arise at trial which would not be common to them all, the court should not allow the maintenance of a class action under old Rule 23(a) (3). This argument was rejected on the ground that "since the complaint alleges a common course of conduct over the entire period, directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial." 329 F.2d at 914.

A "common course of conduct" would appear to be set out in the complaint in the action at bar. The issuance by Yale of seven financial statements allegedly containing a series of false and misleading statements based on cumulative and interrelated data would seem to constitute the requisite "common course of conduct" contemplated by the court in *Harris*.

The case of Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D. N.Y. August 16, 1966) is pertinent here. In that case, an action was brought under new Rule 23 by three plaintiffs on their own behalf and on behalf of all other holders of shares, notes, and debentures issued from 1961 to 1964 by defendant Hotel Governor Clinton. Plaintiffs alleged two causes of action. The first stated that from April through August 1961, defendants fraudulently induced members of the alleged class to purchase securities issued by the Hotel Governor Clinton. The second claim alleged that between December 1962 and the early part of 1964, the defendants fraudulently induced members of the asserted class to purchase an additional issue of debt securities.

Defendants contended, *inter alia*, that the alleged misrepresentations were too varied to satisfy the requirement of common questions of law and fact. In spite of the fact that the "class" was composed of individuals who had purchased securities during two distinct periods of time as a result of two separate securities issues, Judge Palmieri found that "at this stage of the proceedings, it would appear that there are sufficient common questions of law and fact to permit this action to proceed [as a class action] subject to

certain conditions * * *." 41 F.R.D. at 45.

On the basis of the foregoing analysis of the peculiar circumstances of this case and in light of the *Harris* and *Kronenberg* decisions, I conclude that the prerequisite of "common questions of law and fact" is met. The next issue is whether or not those questions "predominate over any questions affecting only individual members of the class". This question was adverted to in the Advisory's Committee's Note to new Rule 23 in the following manner:

> " * * * It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed. See Oppenheimer v. F. J. Young & Co., Inc., 144 F.2d 387 (2d Cir. 1944); Miller v. National City Bank of N. Y., 166 F.2d 723 (2d Cir. 1948); * * *" (39 F.R.D. at 103).

It has been established that the fraud claim at bar does indeed have a "common core", i. e., the issuance of a series of allegedly false and misleading financial statements. Thus, the court must face the issue whether there was "material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."

■ At this stage in the proceedings, it does not appear that the variation in the alleged misrepresentations could be called "material". Although the data contained in the various statements were necessarily different, they were interrelated and cumulative and all purported to represent the financial position of Yale at the times of issuance. A variation in the data included in the financial statements should not be deemed a "material variation in the representations made" for the purposes of Rule 23(b) (3). Rather, this provision of the Rule is more likely aimed at the problems which would arise if oral misrepresentations were involved (see 3 Loss, Securities Regulation (Supp.1962), at 33), or if various officers and agents of a business entity made diverse written representations to prospective buyers of the company's securities.

The parties are at odds over the issue of the kind and degree of reliance on the alleged misrepresentations plaintiffs must show in order to recover. Plaintiffs apparently contend that individual members of the proposed class need not show actual reliance on the allegedly false financial statements in order to recover; defendants maintain that each plaintiff must demonstrate his awareness of and reliance upon a particular financial statement before he can recover. At this juncture, I need not necessarily rule on this question; rather, I must first ascertain whether, in either instance, there would be a "material variation * * * in the kinds or degrees of reliance by the persons to whom they were addressed". If no such "material variation" appears, the basic question of reliance can await later determination.

■ There would be no material variation if plaintiffs need not show that they actually relied upon the false statements. Reliance is usually said to be a factor personal to each plaintiff in a fraud case. See, e. g., Miller v. National City Bank of N. Y., 166 F.2d 723, 728 (2d Cir. 1948). If no actual reliance need be shown, the requirement becomes objective rather than subjective in that each individual would only have to show that he did in fact buy securities during

the period in question. While the mode of proof of purchase would differ among plaintiffs, such variations could hardly be deemed "material" in terms of Rule 23(b)(3) and the Advisory Committee's Note pertinent thereto.

Even if plaintiffs have to prove actual reliance on the allegedly false misrepresentations, there would not seem to be a "material variation" in the kinds or degrees of reliance of plaintiffs. In Harris v. Palm Springs Alpine Estates, Inc., supra, the court observed the following:

"'All or substantially all' of certain misrepresentations * * * are alleged to have been made 'by means of advertisements, brochures and prospectuses to each and all of the plaintiffs and investors.' Concealment and omission of the same material facts are alleged as 'to each of the investors.' 'Each of plaintiffs and the other investors' is alleged to have reasonably relied upon the misrepresentations, and to have been misled by the concealment of facts." (329 F.2d at 914)

The situation here is nearly the same in that the alleged misrepresentations were made in a Yale prospectus and subsequent Yale financial statements and that each statement allegedly concealed or omitted the true financial position of Yale.

As developed in the foregoing discussion of "common questions of law and fact", the court in Harris found that even if defendants' assertion be accepted that the various investors made payments on the securities at different times and stood in different positions with respect to the representations made to them and with respect to the reasonableness of their reliance, such questions common to all investors were "relatively substantial", presumably in terms of the questions affecting the individual members of the class. In light of the amendment to Rule 23, it would seem to be a fair interpretation of the court's words to say that, in Harris, the common questions of law or fact "predominated" over the questions pertinent only to individuals.

It follows that this is the conclusion that should be reached in the case at bar, particularly in that PMM has adverted to no circumstances or factors that would sensibly support a different analysis.

## C.

### FAIR AND ADEQUATE PROTECTION OF THE INTERESTS OF THE CLASS

PMM maintains also that plaintiffs have failed to meet the prerequisite of Rule 23(a)(4) that the representative parties must "fairly and adequately" protect the interests of the class.

It should be pointed out that since the effective date of the amendments to Rule 23, the question of "adequate representation" has become considerably more significant in class actions. Prior to the amendment, at least in the courts in this circuit, a spurious class action affected directly only those who actually participated in the class action. Rosen v. Bergman, 40 F.R.D. 19, 22 (S.D.N.Y.1966). Now, however, all members of the class are bound by the judgment unless they expressly ask to be excluded from the class. Rule 23(c)(3), F.R.Civ.P.; Eisen v. Carlisle & Jacquelin, 41 F.R.D. 147 (S.D.N.Y. Sept. 27, 1966), motion to dismiss interlocutory appeal denied 370 F.2d 119 (2d Cir. Dec. 19, 1966).

Basically, PMM makes two contentions as to the adequacy and fairness of representation. The first is that since "in none of the complaints is the total number of persons comprising the 'class' set forth except for the general statement that 'the members of the class are so numerous as to make it impracticable to join therein in this action'" (PMM's Main Memorandum, p. 11), a class action cannot be maintained, i. e., in the absence of precise information as to the number in the class, the court cannot assume that plaintiffs' purported representation is adequate. The second is that "although presumably there were thousands of different holders of Yale securi-

ties during the periods specified in the complaints not more than one hundred have sought to participate in the consolidated actions. * * * " (PMM's Main Memorandum, p. 11).

These contentions cannot be deemed meritorious. It is true that plaintiffs have not defined the exact number of people in the class that they purport to represent. The class itself, however, has been defined with some precision, i. e., all individuals who bought Yale securities during the period when the allegedly false and misleading financial statements were issued and circulated. Therefore, the group represented cannot be called "amorphous" (see Zachman v. Erwin, 186 F.Supp. 681, 688 (S.D.Tex. 1959)), and the failure to state the exact number in the class does not preclude the maintenance of a class action. To place such a burden on plaintiffs would seem harsh and unnecessary. In fact, the imposition of such a requirement would make the maintenance of class actions in large securities-fraud cases very difficult, if not impossible, and would be contrary to the observation of the Advisory Committee that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action * * *." 39 F.R.D. at 103.

There is some dispute as to the number of plaintiffs involved here. PMM maintains that there are "not more than one hundred"; plaintiffs claim there now are 141 of them. This disparity is not, however, of great significance in resolving the issue whether there is a sufficient number of plaintiffs to adequately and fairly represent the class when, in the words of PMM, "presumably there were thousands of different holders of Yale securities during the period specified in the complaints. * * * "

Professor Moore takes the position that

"while the court may and should consider the number appearing on the record, as contrasted with the number in the class the safest rule seems * * * to be that there must be a showing of representation, relative to the type of class action involved, that will satisfy the court that the interests of the absentee parties will be adequately protected by the representative, plaintiff or defendant. (3 Moore, Federal Practice ¶ 23.07, at 3430–31 (2d ed. 1964))

I am satisfied that such a showing has been made here. Sufficient plaintiffs have already appeared to insure vigorous prosecution of these actions; moreover, counsel for plaintiffs are well-qualified to present and to develop the issues before the court.

There is, however, a possible conflict of interests among the security-holders who are maintaining these actions. Specifically, there is some indication of adverse interests of the common stockholders and the debenture holders. Such a conflict is an outgrowth of the allegation of plaintiffs that Yale declared and paid common stock dividends in excess of limitations set forth in the indenture under which the debentures were issued and sold to the public. Plaintiffs in the *Bloch* action, representing only debenture holders, maintain that they were harmed and the stockholders benefited as a result of such payments.

Rule 23(c) (4) (B) provides, however, that "a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." In view of the possible conflict between the debenture and common stock holders, such a division might be appropriate here. Because this potential conflict, while adverted to, has not been fully developed, however, the court will not *sua sponte* order the creation of subclasses at this point but will direct counsel for the two potentially adverse interests to attempt to reconcile any differences and to settle an order accordingly.

## D.

## THE SUPERIORITY OF A CLASS ACTION

For a class action to be maintainable, not only must the court find that the common questions of law and fact predominate over any questions affecting only individual members, but also it must find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b) (3), F.R. Civ.P.

Four "non-exhaustive" (39 F.R. D. at 104) factors are listed for consideration in determining the superiority of the class action.[4] They are as follows:

"(A) the interest of members of the class in individually controlling the prosecution * * * of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by * * * members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." (Rule 23(b) (3), F.R.Civ.P.)

As to (A): it has been observed heretofore that representatives of the debenture holders contend that the stock and debenture holders should not be in the same class. There has been no indication, however, that individual security holders have any interest in prosecuting their actions alone. This is evidenced by previous willingness of plaintiffs to consolidate their actions in nearly every case active in the Southern District of New York and to submit to the appointment of lead counsel.

As to (B): because of the consolidation of these actions and the appointment of a Rule 2[5] judge, all suits against Yale Express stand in the same posture and have been prosecuted to the same extent. No plaintiff would thus be delayed if a class action is maintained. Moreover, the nature of all litigation already commenced by members of the class is substantially the same, and use of the class action device would in no way materially alter the nature of such suits.

As to (C): it would be highly desirable to concentrate the suits in the Southern District of New York for several reasons. First, such concentration would avoid duplication of effort by attorneys, judges, and parties. Second, it would preclude inconsistent rulings. Third, Yale is a New York corporation and has its principal offices in New York City. Fourth, Yale is undergoing a Chapter X reorganization under the Bankruptcy Act in this court. Fifth, at the direction of the chief judge of this court, the judge who is presiding over the reorganization has been presiding over these security-holder actions and presumably can continue to preside over them as a class action. In sum, this integration of effort hopefully should prove beneficial to the litigants, counsel and the court.

As to (D): since June 22, 1965, "lead counsel" have been in charge of the pending actions. Despite inevitable minor disagreements along the way, it is my judgment that this management device has worked satisfactorily and will continue to do so.

---

4. While Rule 23(b) (3) provides that these factors are also to be considered in determining the question of the predominance of common questions of law and fact, they were not directly adverted to in the discussion of that problem because the Advisory Committee's Note defined the issue so precisely.

5. Rule 2(b) of the General Rules of the United States District Court for the Southern District of New York provides, in pertinent part, that "the chief judge * * * may assign a long and complicated case to a judge for all purposes * * *." The instant case was assigned to me on May 19, 1965 pursuant to an order signed by Chief Judge Ryan.

Although subsections (A)–(D) are not deemed exhaustive, I can think of no other factors which indicate that a class action should not be maintained. I conclude, therefore, that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## E.
## CONCLUSION

On the basis of the foregoing analysis, it is ruled that these suits may properly be maintained as a class action. Under new Rule 23, this decision is not, of course, irrevocable. Rule 23(c) (1) provides that the court's order stating that a class action can be maintained "may be conditional, and may be altered or amended before the decision on the merits." The Advisory Committee's Note adds that a determination that a class action is permissible, "once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound." 39 F.R.D. at 104.

The parties should settle order on notice accordingly. Representatives of the common stock and debenture holders are directed to consider the question of subclasses and submit a proposed order or orders covering this subject.

## II.
## NOTICE REQUIREMENTS

Rule 23(c) (2) states that "in any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort". Since it has been determined that a class action can be maintained under (b) (3), I must address myself to PMM's alternative application for a direction that the notice requirements be complied with at this juncture in the proceedings.

For several reasons, I agree with the contention of plaintiff's attorneys that notice at this point would be premature. As already suggested, although a class action seems appropriate at this time, subsequent development of the facts might indicate otherwise, thus eliminating the necessity of any notice. Then, too, discovery proceedings, which presently are far from completed, and other pre-trial matters, such as pending intervention applications, should be developed further before notice is sent out, especially since there is no evidence that a delay would presently harm any of the security holders. Finally, holders of Yale securities in effect have already received substantially the notice called for by Rule 23(c) (2) in the form of a mailing by the trustee in the Yale Chapter X proceedings calling attention to, inter alia, the existence of these very suits. I do not, of course, mean that the notice requirements of Rule 23(c) (2) have been technically fulfilled by the Chapter X proceeding mailing. From a practical viewpoint, however, I would characterize an order directing the rendering of substantially identical information to the securities holders as redundant and unnecessary at this time.

Settle order accordingly.