Daniel BERLEY, Herman Armel, Alexander Berley, David Berley, Martin Savarick, Joseph Schneider, Morris J. Goldberg, Arnold Turok, Walter Matzner and other similarly situated purchasers of the Common Stock of Interamerican Industries, Ltd., Plaintiffs,

v.

DREYFUS & CO., Abraham Sutin, Emanuel L. Jenkins, Oscar Hausner and Interamerican Industries, Ltd., Defendants

No. 67-Civ. 3018.

United States District Court
S. D. New York.

Dec. 22, 1967.

Dannenberg, Hazen & Lake, New York City, for plaintiffs, by Lawrence Greenapple, New York City, of counsel.

Knapp & Berson, New York City, for plaintiff-intervenor, by Burton L. Knapp, New York City, of counsel.

Royall, Koegel, Rogers & Wells, New York City, for defendants Dreyfus & Co., by John M. Cochran, III, Norman Ostrow, New York City, of counsel.

MEMORANDUM

CROAKE, District Judge.

The three motions decided herein arise from common facts and circumstances. In March 1967 the brokerage house of Dreyfus & Co. became interested in the stock of Interamerican Industries. This interest led to a study of the stock which in turn led to representations, both written and oral, to Dreyfus customers, some of whom bought the stock. The primary written representation was a report dated May

11, 1967.[1] This report was mailed on Friday, May 12, 1967 to certain of Dreyfus' customers. On the following Thursday, May 18, the Securities and Exchange Commission suspended trading in Interamerican after discovering that the stock was not registered.

After trading was suspended, the plaintiffs herein, who had purchased from Dreyfus, brought the present action. They now seek to have it declared a class action pursuant to Rule 23, Fed.R.Civ.P., which is the first motion.

The second motion is for an injunction. On October 2, 1967, motivated by a desire to maintain good will, or by pending litigation, on perhaps by both, Dreyfus & Co. sent a form letter to persons who had purchased Interamerican from it,[2] offering to refund their purchase price. Plaintiffs wish to enjoin Dreyfus from settling its problems so easily and thereby reducing the size of the class of potential plaintiffs and, incidentally, the amount of the fund from which settlement would be made and attorneys' fees would be calculated.

The third motion is Irving Wolfe's petition to intervene as a plaintiff. Wolfe would also like to have the action proceed as a class action and supports the plaintiffs' position on motion number one.

Rule 23, Fed.R.Civ.P., governing class actions has been rewritten recently so we write on a relatively clean slate. See Fischer v. Kletz, 41 F.R.D. 377 (S. D.N.Y.1966). While in agreement with the basic approach of *Fischer*, we think this case presents different problems. Assuming arguendo that the four *sine qua non* enumerated in paragraph (a)

of Rule 23 are met, we turn to the additional, alternative requirements set forth in paragraph (b).

Subparagraph (b) (1) is by its terms not applicable to the present case. Neither, in view of the advisory committee's notes as to its purpose,[3] is subparagraph (b) (2). Plaintiffs must therefore meet the requirements of subparagraph (b) (3) if the action is to be maintained as a class action.

Subparagraph (b) (3) provides in pertinent part that a class action can be maintained if:

> "the court finds that * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; * * *."

Although Dreyfus & Co.'s offer to refund the purchase price to its customers is not quite "another method for the fair and efficient *adjudication* of the *controversy*," we think that subparagraph (b) (3) read as a whole reflects a broad policy of economy in the use of society's difference-settling machinery. One method of achieving such economy is to avoid creating lawsuits where none previously existed. This is in part why "the extent and nature of any litigation * * * already commenced" is pertinent to the required finding. If a class of interested litigants is not

---

1. Dreyfus Exhibit A.

2. Dreyfus Exhibit B, p. 1.

3. "The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."

already in existence[4] the court should not go out of its way to create one without good reason.

Dreyfus appears to have amicably settled its differences (if indeed there were any) with most of its customers. The plaintiffs would have us enjoin any further such settlements and give notice of this litigation to all of Dreyfus' customers and certain others. In our view, this would needlessly replace a simple, amicable settlement procedure with complicated, protracted litigation. In addition, such an injunction would serve no useful purpose. The settlement forms that Dreyfus mailed to its customers along with its refund offer do not purport to release Dreyfus from any liability whatsoever.[5] Dreyfus has thus left these people with the best of both worlds. They can have their money back now, and still be free to bring an action for further damages if the present suit is successful. To enjoin Dreyfus from paying these customers their money would be manifestly unfair to them.

Dreyfus' position with respect to refunds gives the present plaintiffs the best of both worlds as well. The only

damages it is necessary to sue for are those punitive damages above and beyond the amount of the refund Dreyfus has already offered.[6] Such damages will be awarded only if any misrepresentations by Dreyfus are shown to have been fraudulent. If the present action is not made a class action, these punitive damages would be divided among just that many fewer persons.

■ Finally, there is the petition by Irving Wolfe to intervene. Rule 24 allows intervention in the discretion of the court "when an applicant's claim * * * and the main action have a question of law or fact in common." That is certainly the case here, and the court sees no reason why Wolfe should not be permitted to intervene. Indeed, no one appears to have expressed substantial opposition to that application.

In accordance with the foregoing, the motions to proceed as a class action and for an injunction are denied. The motion by Irving Wolfe to intervene is granted.

So ordered.

4. Only the present plaintiffs have elected to pursue Dreyfus in court. Dreyfus reports in its affidavit that "with only a few exceptions, all of Dreyfus' customers have been reimbursed. $150,084.27 of an original $163,961.61 has been returned to 64 customers, including all of the original plaintiffs. Only those customers who purchased and then sold, making a profit, have not as yet been reimbursed on their second purchases." Affidavit p. 9.

5. "I herewith tender my stock of Interamerican Industries, Ltd. in return for the purchase price of $ _____ Certificate No. _____

Date——————."

In its brief at page 18 Dreyfus states that "in fact, none of the purchasers' rights or remedies by way of damages,

etc. can be destroyed or eradicated as a result of acceptance of the terms of the Dreyfus letter." In our view this forecloses Dreyfus from arguing at any future time that these settlements released Dreyfus from liability above and beyond the amount of the settlements.

6. There is some dispute as to the question of interest on the purchase price from the date of the sale to the date of the refund by Dreyfus. Plaintiffs' brief states, p. 4, that "The Dreyfus & Co. offer includes no offer of interest." The Dreyfus brief states, p. 15, that "all damages * * * principal paid plus interest, have already been tendered by the defendant to its customers, * * *" We assume that the statement by Dreyfus & Co. is correct or will be made so promptly.