Mac HERBST, Sylvia Herbst et al.,
Plaintiffs,
v.
Charles R. ABLE et al., Defendants.

Harry H. LEVY et al., Plaintiffs,
v.
DOUGLAS AIRCRAFT COMPANY, Inc.,
et al., Defendants.

Lawrence J. BEECHER et al., Plaintiffs,
v.
Charles R. ABLE et al., Defendants.

Lillian GOTTESMAN, Plaintiff,
v.
A. V. LESLIE et al., Defendants.

Lawrence KOBRE, Plaintiff,
and
Oscar Moses and Anthony Crasa,
Intervenor-Plaintiffs,
v.
Wellwood E. BEALL et al., Defendants.
Nos. 66 Civ. 3216, 3382, 3471, 3775
and 68 Civ. 4141.

United States District Court
S. D. New York.
March 10, 1969.

As Amended on Reargument
April 21, 1969.

---

**14**

Pomerantz, Levy, Haudek & Block, New York City, for Mac Herbst, Sylvia Herbst, Jack Heidenberg, Lawrence J. Beecher and others.

Bergerman & Hourwich, New York City, for Harry Levy, Jack H. Lieb, Rosamond E. Lieb, Samuel Axelrod, Joseph M. Newmark, and Hoda Corp.

Solomon Kaufman, New York City, for Samuel Schulman.

Lawrence Milberg, New York City, for Lillian Gottesman.

Gerald M. Hertz, New York City, for Harry Ginsberg.

White & Case, New York City, for all defendants, except Merrill Lynch, Pierce, Fenner & Smith, Inc., and Ernst and Ernst.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for Merrill Lynch, Pierce, Fenner & Smith.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Ernst and Ernst.

Weinstein & Levinson, New York City, for Lawrence Kobre, Oscor Moses and Anthony Crasa.

*Decision on Motions to Declare These Actions Class Actions*

MOTLEY, District Judge.

■ Decision on the motions in four of these five actions to have them declared class actions, pursuant to Fed.R.Civ.P. 23, was reserved by this court in its former opinion of August 26, 1968, 45 F.R.D. 451 pending an evidentiary hearing to be held on December 2, 1968. Since that time the fifth action, Kobre v. Beall, was instituted and plaintiffs in that action also moved to have case declared a class action. A similar hearing was held in that case on January 24, 1969. The purpose of these hearings was to determine as to each of these five cases: 1) whether plaintiffs can "fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a) (4); 2) whether common questions of law or fact predominate over any questions affecting an individual member, making a class action "superior to other available methods for the fair and efficient adjudication of the controversy," Fed.R.Civ.P. 23(b) (3); and 3) whether a sufficiently efficacious method of notice is practicable, Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568–570 (2d Cir. 1968). The court holds that each of the five actions is maintainable as a class action for the reasons set forth herein and subject to the following limitations and conditions.

## HERBST

*Herbst* is an action allegedly on behalf of all persons who converted 4% debentures of Douglas Aircraft Company, Inc. into common stock of that company between April 13, 1966 and May 3, 1966. Plaintiffs Herbst purchased 10 debentures on April 12, 1966, for $14,060.56, and converted these, on May 3, 1966, into 133 shares of Douglas stock. Plaintiff Heidenberg purchased, between January 3 and 7, 1966, 200 debentures for $258,111.25. On or about April 19, 1966, he

converted these into 2,662 shares of stock. On or about November 14, 1966, he sold 500 of such shares for $21,514.05. Plaintiff Ginsberg, on or about November 26, 1965, purchased 20 debentures for $25,755.14. On or before May 3, 1966, he converted these into 266 shares of common stock which he sold on or about June 28, 1966, for $17,709.73. One plaintiff who converted still holds his stock, one has sold his sock at a loss, and one holds some stock, having sold the rest at a loss. Plaintiffs allege false and misleading statements on the part of defendants which induced them to convert their debentures into common stock and thereby suffer loss.

*Adequate Representation*

Plaintiffs have successfully convinced the court that a plaintiff who has acquired and *retained* securities of Douglas can "fairly and adequately" represent those who purchased securities and thereafter sold them—and vice versa. Practically every class action that can be brought under the Securities Acts by purchasers of securities involves claims both by those who retained their securities and those who sold them or by those who sold some securities, but still retain others. The answer to this problem is twofold. On the one hand, it is simply that every defrauded stockholder wears two hats, but that his personal interest far overshadows his interest as an equity-holder. Moreover, if, by chance, any class member currently has holdings of Douglas stock so large that he would prefer not to assert his claims for past losses, such a person, once notified of the pending action, always has the option under Fed.R.Civ.P. 23(c) (2) to request exclusion from the class. On the other hand, this case does not involve a real conflict of interest between members of the class such as that involved in Pomierski v. W. R. Grace & Co., 282 F.Supp. 385 (N.D.Ill.1967). In *Pomierski,* a warrant-holder who did not exercise his rights before cut-off date was found to be unable to represent fairly and adequately those who did exercise their rights because warrant-holders who had exercised their rights would not be willing to have the transaction declared void and be forced to return their stock, repay dividends, and file amended tax returns seeking refunds. In this case, the remedy sought is monetary damages, and the only difference between sellers and retainers may be in their measure of damage.[1]

It has recently been held that adequate representation comprises two elements: (1) coincidence of the interests of the representative party with those of the class and (2) vigorous prosecution of the action by the representative party and his attorney. Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y. 1968); Mersay v. First Republic Corporation, 43 F.R.D. 465, 469 (S.D.N.Y. 1968). As to the latter, the court finds no reason to suspect any lack of diligent and vigorous prosecution on the part of plaintiffs and their counsel. As to the former, the court now feels that any conflicts of interest between members of the purported class are more academic than real.[2] If, however, a substantial conflict should develop between those who sold shares at a loss and those who still retain them, the court will at that time designate appropriate subclasses. Fed.R.Civ.P. 23(c) (4).

---

1. The Advisory Committee's Note to Rule 23 recognizes that common questions as to liability "may be an appealing situation for a class action, * * * despite the need * * * for separate determination of the damages suffered by individuals within the class." 39 F.R.D. at 103.

2. In *Mersay,* the court held that the interests of the plaintiff as a defrauded shareholder were not inconsistent with those of the class of shareholders, even though plaintiff was also an insider of the corporation being sued.

*Common Questions*

■■ As to the question of the predominace of common questions of law and fact over individual questions, the court finds that the predominant issue in this case is the alleged fraudulent nature of Douglas's financial statements and representations and their effect on the market price of Douglas securities. Defendants argue strenuously that this case involves predominantly individual questions of reliance, and that plaintiffs' theory of market fraud is inapplicable to a case involving the conversion of debt securities into equity securities. The court finds that these arguments go to the merits of plaintiffs' case rather than to the question of the maintenance of a class action in accordance with the manner in which plaintiffs seek to proceed. The Second Circuit recently decided that class actions are appropriate in cases involving alleged violations of SEC Rule 10b–5, notwithstanding the "lurking" presence of issues of individual reliance. Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968). The court there said:

> "Wolf earnestly argues that each person injured must show that he personally relied on the misrepresentations in order to recover and thus any common issues of misrepresentations do not predominate over the individual questions of reliance. Even if Wolf is correct in its assertion of the need for proof of reliance, and we express no views on that issue, we must still reject the argument. Carried to its logical end, it would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action. Kronenberg v. Hotel Governor Clinton Inc., 41 F.R.D. 42, 45 (SDNY1966)"

Furthermore, in Fischer v. Kletz, 41 F.R.D. 377, 382 (S.D.N.Y.1966), a suit similarly involving a series of allegedly improper financial statements in connection with the sale of stock, the court concluded that only in cases involving material variations in the kinds and degrees of reliance (e. g. where oral statements are involved) would a class suit be impracticable because of the necessity for proof of individual reliance.

In the instant case, the court finds similar reasoning applicable. Plaintiffs say: "All but $883,000 of the $27,900,000 of old 4% debentures were converted—not because of misrepresentations by Douglas to the individual debenture holders but because of the then market price of the common stock which greatly favored conversion. The relevant impact of the misrepresentations was *on the market*. It was the artificially heightened market price, pure and simple, which operated on plaintiffs and other members of the class to induce conversion." (Brief, p. 6). If plaintiffs can prevail in their "fraud on the market" theory, this may be sufficient to sustain a recovery under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, since this statute and the rule promulgated by the Securities Exchange Commission pursuant thereto, Rule 10b–5, 17 C.F.R. § 240.10b–5, are broad anti-fraud provisions, *cf.* S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968), which have as their purpose the elimination of a variety of activities, "whether or not sufficient to sustain an action for fraud and deceit at common law." Note, Texas Gulf Sulphur: Expanding Concepts of Corporate Disclosure Under SEC Rule 10b–5, 43 St. John's Law Review 425, 429 (1969).

Also, as the court in *Dolgow, supra*, pointed out, a common issue of law and fact may be presented in many actions based on Section 10(b) as to whether a prima facie case of reliance exists where plaintiffs, who were members of the class, purchased securities pursuant to a statement designed expressly to solicit and induce purchase of securities.

Thus, this court finds that there are common questions of law and fact common to all who converted their 4% de-

bentures into stock and that, at this juncture, it appears that these questions predominate over any questions peculiar to individual members of the class.

*Other Available Methods*

It seems eminently clear that as to the common questions, the alleged false statements and their effect on the market price of Douglas' common stock, the class action is superior to other available methods for the fair and efficient adjudication of the controversy. The court sees two alternatives to allowing these permissive joinder actions (Fed.R.Civ.P. Rule 20(b)) to be maintained as class actions: 1) permissive intervention at this stage by an unknown number of possible intervenors—possibly as many as it is claimed are members of the class, Fed.R. Civ.P. 24(b); or 2) separate new actions (including other permissive joinder actions) by an unknown number of plaintiffs—possibly as many as it is claimed are members of the class. With these alternatives in mind, the superiority, in terms of judicial economy, of declaring these actions to be class actions becomes apparent. The economy consideration here will affect not only the time of judges and court personnel, but also the time of parties, particularly defendants. Furthermore, it would be financially unfeasible for potential plaintiffs whose losses are relatively small to bear the cost of intervention.

The interests of the parties-plaintiff, as those interests relate to the common questions of law and fact, are so identical with other members of the class as to preclude any substantial interest on the part of other members of the class not yet parties in individually controlling the prosecution of separate actions. There are no other suits arising out of this controversy other than the instant suit on behalf of the 4% debenture holders. For reasons already stated in connection with motions to transfer these cases to California, Herbst v. Able, 278 F.Supp. 664 (S.D.N.Y. 1967), it is desirable to concentrate the litigation of these claims in this particular forum. A class action may be maintained even though the measure of damages as to each member of the class may be different. Advisory Committee Notes, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966). In a case such as this, involving a large number of possible claimants, the damage issue may be referred to a special master. Therefore, the difficulties likely to be encountered in the management of these actions as class actions appears to be no greater than those in other complex, multiparty actions familiar to this court. For all of the foregoing reasons, the court finds, at this stage, that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b) (3).

*Notice*

Finally, as to the question of notice, plaintiffs have introduced evidence indicating that 359,076 shares were issued on conversion in accordance with the following breakdown:

| Issued in Names of | | |
| --- | --- | --- |
| 70% | 978 | Brokers |
| 30% | 6 | Banks |
| | 82 | Nominees |
| | 557 | Others |

Plaintiffs now state that they are prepared to pay the expense of sending notice by mail to all the aforementioned brokers and to all their relevant customers identified by them, as well as to the banks, nominees and others in the 30% group. Plaintiffs also indicate their willingness to make inquiry of the 98 brokers to ascertain the names and last known addresses of their relevant customers as well as their willingness to answer inquiries from members of the class.

18

The court considers notice by first class mail to these entities and individuals "the best notice practicable under the circumstances," Fed.R.Civ.P. 23(c) (2), and therefore instructs the defendant Douglas promptly to supply such material in its possession to plaintiffs' attorneys as will help enable them to locate the original beneficial owners of the converted 4% debentures.

In addition, however, the court shall require a supplemental published notice in accordance with the specifications set forth at the end of this opinion.

## LEVY, BEECHER, and GOTTESMAN

The other three actions, *Levy, Beecher,* and *Gottesman,* all relate to 4¾% debentures of Douglas and involve the time period after July 12, 1966.

*Levy* is a suit allegedly on behalf of all persons who purchased 4¾% debentures of Douglas between July 12, 1966 and September 29, 1966, and have since sold said debentures at a loss; *Beecher* is a suit allegedly on behalf of all persons who purchased 4¾% debentures during the period of July 12, 1966 to September 29, 1966; and *Gottesman* is an action allegedly on behalf of all persons who bought 4¾% debentures during the period of July 17, 1966 to September 29, 1966 and thereafter sold said debentures at a loss or continued to be the owners thereof and sustained losses thereby.

In regard to the problems of adequacy of representation, predominance of common questions of law and fact, and the superiority of a class action over other available methods of redressing the wrongs alleged, the court finds that these three actions should at this time be denominated class actions for the same reasons expressed in regard to *Herbst.*

■ The court notes that to the extent plaintiffs' claims in these three actions arise only under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, individual reliance is not an issue and class actions are particularly appropriate. Escott v. Barchris Const. Corp., 340 F.2d 731, 733 (2d Cir. 1965) *cert. denied, sub nom.* Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965). Moreover, Section 11 only provides for recovery of compensatory damages. Since the time when the actions were first commenced, the market price of these debentures has reached and exceeded their issue price during the period of July 12, 1966 to September 29, 1966. All those purchasers who still retain debentures, even if the market price should drop, have therefore suffered no recoverable loss under Section 11 since they could have sold them at a profit. The *Levy* plaintiffs, apparently limiting their suit to Section 11, have voluntarily limited the class on behalf of which their suit is brought to those purchasers who sold debentures at a loss. The *Beecher* and *Gottesman* plaintiffs have not chosen to do likewise, and thereby seem to retain their Section 10(b) claim under the 1934 Securities Exchange Act, 15 U.S.C. § 78j, under which damages are recoverable under a fraud theory. According to this theory, damages are calculated to be the difference between the real value of the property at the date of its sale and the price paid for it with interest from that date. Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965).

■ As to the question of notice, the court finds that due to the similar class definitions in these three actions one joint notice with costs apportioned equally among the three actions should be sent out by first class mail by plaintiffs to each purchaser of the 4¾% debentures during the period of July 12, 1966 to September 29, 1966 that can be identified. As in *Herbst,* the court hereby instructs defendant Douglas promptly to cooperate with plaintiffs' attorneys in supplying any material in its possession as will enable them to identify, locate, and notify the 4¾% purchasers. Evi-

dence presented at the hearing (Beecher, plaintiffs' Exhs. 4, 6, 7) on December 2, 1968, showed that the original issue was registered as follows:

| Face Principal Amount | Issued in Names of |
| --- | --- |
| $ 2,353,000 | Various Securities Dealers |
| $72,647,000 | All Others |

The same evidence showed transfers of the debentures, recorded through October 24, 1966, in the following categories:

| Items | Face Principal Amount | Issued in Names of |
| --- | --- | --- |
| 10,073 | $19,071,000 | Brokers |
| 812 | 30,582,000 | Nominees |
| 14 | 202,000 | Banks |
| 2,323 | 30,825,000 | Others |
| 13,222 | $80,680,000 | |

When defendants furnish plaintiffs a copy of the records from which the foregoing data were extracted, plaintiffs shall make inquiry of the brokers so identified in order to ascertain the names and last known addresses of their relevant customers.

In addition, since it is unlikely that all dealers who handled transactions in debentures during the revelant period could furnish the names and addresses of every purchaser, the court shall require a supplemental published notice in accordance with the specifications set forth at the end of this opinion.

### KOBRE

*Kobre* is an action on behalf of all purchasers of common stock of Douglas who allegedly sustained damage on account of an alleged series of misrepresentations and omissions made in statements issued by Douglas as to Douglas' profits and prospective profits between January 1966 and September 1966. The name

parties-plaintiff purchased Douglas stock between June 22 and June 24, 1966 and, thereafter, between July 28 and October 11, 1966, sold such shares at a loss totaling about $20,000. However, plaintiffs also purport to represent purchasers who did not sell but who retained their stock purchases. Plaintiffs say: "The class consists of all persons who purchased Douglas common stock in 1966 (prior to the public announcements by the company on June 24, 1966 and September 28, 1966) at inflated market prices caused by defendants' acts and failures to act, * * *, suffering damages thereby, and also such persons who thereafter sold such stock, suffering losses thereby." (Weinstein affidavit in support of motion, p. 6).[3] The court addresses itself first to the questions whether this action involves common questions of law and fact, common to all the members of the purported class, and whether such questions predominate over all other individual questions.

This action on behalf of common stockholders is similar to Dolgow v. Anderson, 43 F.R.D. 472 (S.D.N.Y.1968); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966), and Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966), in that we are not dealing with a single alleged fraudulent misrepresentation or the issuance of a single document containing several alleged misrepresentations but with what appears to be a common course of conduct over the entire period which allegedly affected the price

3. The amended complaint in its opening paragraph alleges that the action is brought on behalf of "all present and former stockholders of Douglas Aircraft Company, Inc. similarly situated."

of the common stock. Class actions were recognized as sustainable in all of those cases on the "common course of conduct" theory. In Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), the Court of Appeals for this Circuit likewise embraced the "common course of conduct" theory. (p. 300).

■ Here, as in *Green*, plaintiffs also allege that the same false information regarding Douglas' earnings appear in several documents on which the class relied. In *Green*, plaintiff purchased shares after the issuance of a third prospectus and sought to represent purchasers of stock who relied on one of the earlier prospectuses. The court found that certain alleged misrepresentations and omissions were common to all three documents and, consequently, found common questions of law and fact despite purchases at different times. The court found a class action particularly efficient under such circumstances. The court finds that here there are also alleged misrepresentations and omissions common to several documents despite the fact that all stockholders did not purchase their stock at the same time with relation to the issuance of the various documents and that the existence of such facts makes a class action desirable.

The "standing dominoes" theory enunciated in Fischer v. Kletz, supra, 41 F.R.D. at 381, was also embraced by the Court of Appeals in *Green*. In *Fischer* the court noted that " * * * one misrepresentation in a financial statement can cause subsequent statements to fall into inaccuracy and distortion when considered by themselves or compared with previous statements." That "standing dominoes" theory is likewise applicable here.

This court finds, therefore, that there are common questions of law and fact in *Kobre*.

■ The court also finds that these questions predominate over individual questions despite lurking questions of individual reliance and damages for the reasons stated by the court in *Green* and cited, *supra*, with respect to the *Herbst* case. The *Kobre* plaintiffs say they relied upon the *written statements* issued by Douglas. There is, therefore, not likely to be such variation in the kinds and degrees of reliance as would militate against class action. See Fischer v. Kletz, *supra*, 41 F.R.D. at 382. The question of reliance, itself, may well be one of those claims typical of the claims of the entire class. In a class action it is obviously unnecessary to call every member of the class to prove a typical claim. Plaintiffs may be able to prove that it is more likely than not that the class relied on the statements. Also, here, as in *Dolgow, supra*, 43 F.R.D. at 491, plaintiffs are contending that the *purchase* of the stock at a price which was affected by defendants' improper activities constitutes sufficient reliance. (amended complaint, para. 23). The facts proved may also obviate altogether the need for proof of reliance as such action on the part of defendnts in allegedly manipulating the price of the stock through false statements and omissions may be sufficient within the broad anti-fraud provisions of Section 10(b) and Rule 10b–5 as noted above to allow recovery. Moreover, as plaintiffs so aptly note, if they, after being found adequate representatives, should fail to prove their allegations regarding false statements and omissions, there would be no need to decide any other questions affecting only individual plaintiffs such as reliance.

■ This court also finds: 1) the class action superior to all other remedies for the resolution of the common questions for the reasons set forth above as to the *Herbst* action and for the reasons stated in *Dolgow, supra*, 43 F.R.D. at 488 and in *Green, supra*; 2) plaintiffs' attorneys are qualified and experienced in the type of litigation involved; 3) plaintiffs' claims are typical of the claims of those whom plaintiffs purport to represent; 4)

the class is so numerous as to make joinder of all members impracticable.

The most formidable problem presented by this suit is that of notice. Many of the stock purchases involved were made on the open market. Consequently, says Douglas, the exact number and identity of the individual members of the class has not been shown and in all probability cannot be shown because of the large number of transferors and transferees. Douglas estimates the number of transferors and transferees to be approximately 42,000 between January 19, 1966 and the following year, i. e., April 1967. Plaintiffs, however, purport to represent only those who purchased and sold between January 19, 1966 and October 11, 1966. Plaintiffs claim, on the other hand, that the exact number of such persons and the numbers of those who sold their shares and those who retained them can be ascertained by reference to Douglas' stock records. In answer to interrogatories served on Douglas by plaintiffs it has been shown that on December 31, 1965, there were 23,251 shareholders of record of Douglas owning 4,654,974 shares of common stock and on October 3, 1966, there were 28,654 shareholders owning about 5,257,224 shares of common stock, an increase in the number of stockholders of 5,403.

█ It is true that plaintiffs have not shown the exact number of people in the class they purport to represent and may not be able to identify them as individuals, but the class has been sufficiently defined. The class is not an amorphous grouping. Failure to state the exact number or to identify individually every member of the class does not militate against the maintenance of a class action. To require such exactitude would defeat class actions by making them prohibitively burdensome and expensive for the initial plaintiffs, especially in securities fraud cases where individual losses may be relatively small. Dolgow v. Anderson. *supra,* 43 F.R.D. at

492; Fischer v. Kletz, *supra,* 41 F.R.D at 384.

█ Consequently, because of the large number of common stock purchasers and transferees and the extreme difficulty in identifying them for the purpose of individual notice, the court has concluded that published notice is "the best notice practicable under the circumstances." Fed.R.Civ.P. 23(c) (2). However, the cost of publishing a notice of sufficient size in both the Wall Street Journal and the New York Times is beyond the amount plaintiffs are willing and able to spend. Plaintiffs indicated at a hearing on these class action questions on January 24, 1969, that they are prepared to pay "a few thousand dollars" to cover the cost of publishing notice in the Wall Street Journal and in the financial section of the New York Times. The losses of the name plaintiffs are about $20,000. The parties have submitted date indicating that the cost of a half-page legal notice advertisement in the National Edition of the Wall Street Journal is $6,716.72 and in the financial section of the New York Times is $3,840. Because of the large number of persons, more than one notice should be required. If plaintiffs were required to bear expense at this juncture which would exceed their losses, it is obvious that many shareholders would be foreclosed a remedy. Such shareholders' losses, while substantial in personal terms, like plaintiffs', are nevertheless not substantial enough to make practicable the initiation of separate legal actions. Extremely expensive and stringent notice requirements in these common stock fraud cases would render the class action device as to them a nullity.

The court has decided to allow the *Kobre* plaintiffs to participate in the cost of three published notices applicable to all five of these actions. In arriving at this conclusion, the court has also considered the fact that, due to the wide publicity in the financial community given

both the SEC proceedings against defendant Merrill Lynch, Pierce, Fenner & Smith and institution of these actions for damages, partially effective notice regarding the pendency of these actions has already been given to a great many of the potential class members in this suit. The court has also considered the fact that such publication may be republished by other financial media and other papers in the form of news stories because of the wide publicity already given the alleged facts of these cases.

Plaintiffs in the *Levy* case argued that the court should require defendants to bear the expense of giving notice. Their argument was that the fiduciary obligations of the corporation, the advantages to the corporation of a judgment with *res judicata* effect against a class, and the ability of the corporation to bear the cost dictate such a result. In Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568, 570 (2d Cir. 1968) the court ruled that the burden of furnishing notice and the initial cost of same is on the plaintiffs when they are the representative party. But does this mean that defendants may not ultimately be directed to pay the expenses of giving notice in certain circumstances? The court does not now decide this question of the ultimate burden of the cost of giving notice. The answer may lie in how many class members are ultimately benefitted and to what financial extent as a class. The presumption is in class actions of this type that the bringing of such actions are financially feasible for the class. This presumption is one of the reasons for allowing the class action device.

*Notice Applicable To All Cases*

The court shall require the publication of three joint notices, the size of one half page, placed in the Wall Street Journal and in the financial section of the New York Times. One such notice shall appear during the month of April, one during the month of May, and one during the month of June, 1969 in each of the two newspapers. The notices shall be divided into three parts; one relating to *Herbst,* one related to *Levy, Beecher,* and *Gottesman,* and one relating to *Kobre.* The publication costs of these notices shall be apportioned equally among the five actions.

*Time Schedule*

Plaintiffs in *Herbst, Levy, Beecher,* and *Gottesman,* will have until April 30, 1969 to make inquiries of brokers and others, prepare a suitable written notice, and present such notice to the court for approval, together with a definite plan for sending out individual notices to the members of the respective classes as required. Plaintiffs in *Levy, Beecher,* and *Gottesman* shall be expected to specify how costs and labor will be divided both in the task of sending out by mail one joint notice and in that of answering inquiries from members of the class. If the court approves the notice and notification plans, individual notices shall be mailed first class within 40 days thereafter.

Plaintiffs in all five cases are to submit, on or before April 1, 1969, their proposed joint publication notice for court approval.

Submit order on notice within ten days of this decision.