David WEISS, on behalf of himself and as representative of all other persons similarly situated, Plaintiff,

v.

TENNEY CORPORATION, Jerry M. Tenney, Robert E. Morris, Robert Reale, Martin Comart, Harold W. Beery, Arnold Gottlieb and Frank Satenstein, Defendants.

No. 63 Civ. 773.

United States District Court
S. D. New York.

May 21, 1969.

Herman Odell, New York City, for plaintiff.

Shea, Gallop, Climenko & Gould, New York City, for defendants Tenney Corporation, Jerry M. Tenney and Robert Reale; Leon Gold, New York City, of counsel.

Weisman, Celler, Allan, Spett & Sheinberg, New York City, for defendant Frank Satenstein; O. John Rogge, David Jaffe, Abraham Wax, New York City, of counsel.

Reavis & McGrath, New York City, for defendant Harold W. Beery; Marland Gale, New York City, of counsel.

Sylvester, Harris & Burstein, New York City, for defendant Robert E. Morris; Donald L. Kuba, New York City, of counsel.

Hofheimer, Gartlir, Hofheimer, Gottlieb & Gross, New York City, for Arnold Gottlieb and Martin Comart; Harry Sabbath Bodin, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Plaintiff's motion requires the filing of yet another opinion in the increasing

stream of jurisprudence in an area of considerable importance to courts and litigants in this circuit, and especially in this district. The Court is called upon to determine whether, under revised Fed.R. Civ.P. 23, this action brought under the 1933 and 1934 Federal Securities Acts, as pleaded in an amended complaint filed May 24, 1963, may be maintained on a class basis.

Rapid development of Fed.R.Civ.P. 23 —taken in conjunction with the confusing and prolix papers and briefs submitted by counsel, the inartistic drafting of the amended complaint, and the raising of issues immaterial to a motion of this sort—has made the Court's task in this case most difficult. Nevertheless, the Court is of the opinion that the class action may be maintained as such, but also has concluded that further amendment of the amended complaint is necessary before the Court "shall determine by order whether" said action "is to be so maintained." Fed.R.Civ.P. 23(c) (1).

## I.

Plaintiff's amended complaint alleges jurisdiction under the Securities Act of 1933, 15 U.S.C. § 77a et seq. [1933 Act], and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. [1934 Act]. It charges, in essence, that defendants made fraudulent misstatements, misrepresentations, and fraudulently omitted to state certain material facts in connection with the issuance of Tenney Corporation Class A common stock. The amended complaint consists of one count.

Tenney Corporation (Tenney) was organized early in 1960. The corporation, on or about September 14, 1960, issued 1,681,536 newly authorized shares, covered by a Registration Statement and prospectus of that date. Of the total, 1,474,336 shares were issued to persons who accepted Tenney's offer to exchange its shares for interests in various real estate syndicates. The shares began trading over the counter on or about September 15, 1960.

Tenney sent a series of monthly bulletins to its stockholders from November, 1960 through October, 1962. It also sent to its shareholders in February, 1962 an annual report for the fiscal year ended October 31, 1961.

Paragraph 10 of the amended complaint, which generally sets forth the charges of fraud respecting these various corporate statements and pronouncements, uses the language of section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a) (1964), and of S.E.C. Rule 10b–5, 17 C.F. R. § 240.10b–5, *in haec verba.*

The amended complaint, thereafter, details the various alleged false and misleading statements (¶¶ 11, 12) and alleges that defendants acted with knowledge that the public would, on the basis of these statements, create a market for Tenney stock, that the market price would rise, and that the market activity would increase and become intensified. (¶ 16). This course of conduct is alleged to have taken place for the purpose of enhancing the value of defendants' stock and to enable Tenney to sell additional shares at a price higher than the true and actual value. (¶¶ 17, 18).

The entire thrust of the complaint appears to consist of charges of fraudulent misstatement and misrepresentation, and fraudulent manipulation—a cause of action under section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a) (1964), and section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) (1964).

Nevertheless, plaintiff has taken the position, in his various briefs filed in support of this motion, that the complaint (which, as noted, consists of one count) sets forth two separate causes of action. The first, under section 11 of the 1933 Act, 15 U.S.C. § 77k (1964), seeks recovery of plaintiff's damages arising from the purchase of stock covered by the September 14, 1960 Registration Statement and prospectus, which are alleged to contain these misstatements and misrepresentations. Recovery under this section is limited to the difference between

the actual purchase price of the shares (not exceeding the initial offering price) and the value of the shares at the time suit is brought (or the proceeds received upon sale before or after the commencement of suit). Section 11(e), 15 U.S.C. § 77k(e) (1964). The maximum recovery is limited to the initial offering price. Section 11(g), 15 U.S.C. § 77k(g) (1964).

The initial offering price is said to be approximately $10.00 per share. Plaintiff, however, purchased 100 shares of Tenney stock over the counter on November 30, 1961 at a total purchase price of $1,880.00. He purchased an additional 200 shares, over the counter, on January 23, 1963 at a total purchase price of $720.00. He sold 100 shares on December 28, 1967, receiving net proceeds of $26.95. He alleges that, on March 18, 1963 (when suit was commenced), the market price of Tenney Class A common stock was $2.00 a share, which assertedly was the approximate true value of the shares at the time he purchased them.

The second cause of action—under section 17(a) of the 1933 Act and section 10(b) of the 1934 Act—which requires proof of fraud, seeks to recover the balance of plaintiff's damages. Though he could conceivably recover all of his damages under section 17(a) of the 1933 Act and section 10(b) of the 1934 Act, plaintiff contends that his primary action is under section 11 of the 1933 Act (with its less onerous burden of proof) and that he will be litigating that cause of action earnestly.

These two causes of action (though they may arise from a common nucleus of operative facts) are distinct in terms of legal theory and requirements of proof. They differ as to the identity of those persons who, in each case, can prove a viable claim. Consequently, a sound conclusion—that claims of a class involve common or dissimilar questions of law or fact, or that plaintiff will adequately represent the class—can be reached only when the Court has adequate knowledge of the nature of all of plaintiff's claims and legal theories.

The Court should not be required to ascertain what are or will be the litigable issues of fact and law by a process of speculation or surmise. While modern pleading and procedure requires a plaintiff only to give notice of the facts giving rise to his claim and to afford defendants the opportunity to become more fully informed through pre-trial discovery, the Court, on a motion of this particular nature, deals primarily with the pleadings, and often may not have the results of such discovery at the time it must decide the motion. Consequently, in a class action, the complaint should contain the basic elements of plaintiff's contentions. And one of the principal requirements of a well-drafted complaint in a class action is a specific and unambiguous statement of each separate cause of action and claim for relief.

Until the complaint expressly sets forth all of the various causes of action that will be the subject of trial, a motion under Rule 23 is premature. And unless plaintiff delineates, with a fair degree of specificity, the precise classes of persons he seeks to represent with respect to each such cause of action, his motion papers are insufficient. Therefore, the Court is of the opinion that before bringing on this motion, plaintiff should have further amended his amended complaint so as to set forth explicitly his claim under section 11 of the 1933 Act.

Furthermore, plaintiff should have elucidated the identity of the particular classes he suggests that he be permitted to represent with respect to each cause of action or claim.

Plaintiff has clearly stated in his memoranda however, that he is pressing two separate causes of action. The filing of a second amended complaint, thus, is not likely to add appreciably to the information before the Court. Nevertheless, a second amended complaint

is necessary because counsel's memoranda are not an adequate substitute for a proper pleading. In order to expedite this already protracted litigation and to enable plaintiff to prepare an appropriate second amended complaint, however, the Court, will not postpone its consideration of the motion until after the filing of the second amended complaint.

The Court can discern the class of persons plaintiff seeks to represent with respect to each of the two claims [1] and is thus of the opinion that it is able, on the basis of the information contained in the record presently before it, to make the appropriate determinations. Hence, the Court will at this time, decide the motion, though it will hold its order regarding the maintainability of the class action in abeyance pending the filing of a second amended complaint. See Part V, *infra.*

## II.

### SECTION 11 CLASS

The claim for recovery based on section 11 of the 1933 Act has as its core the allegation that the Registration Statement and prospectus were false and misleading because (1) the anticipated earnings of Tenney were overstated; (2) the amount of "Cash Available for distribution to stockholders" was overstated; and (3) the amount of cash anticipated to be distributed per share was misrepresented as being derived wholly from the net cash flow of the company's operations. These figures are highly significant to investors in real estate concerns and, for purposes of this motion at least, they are deemed to be material.

▆ If these allegations are proven, defendants would be liable to all those persons who purchased Tenney stock before February, 1962 (when Tenney's "twelve-month statement," *see* section 11 (a), was made generally available) either over the counter or directly by accepting Tenney's exchange offer, subject to certain affirmative defenses. Moreover, all those who purchased after February, 1962, could recover if they proved reliance on the misstatements contained in the Registration Statement and prospectus. Section 11(a), 15 U.S.C. § 77k(a) (1964).

*Numerosity of the Class—Rule 23(a) (1)*

▆ Assuming, for the present, that all those who have claims arising under section 11 of the 1933 Act constitute but one class, the first prerequisite for maintaining the suit on a class basis —that the class be "so numerous that joinder of all members is impracticable," Fed.R.Civ.P. 23(a) (1)—is met. Though there are no firm guidelines as to how many are too numerous, the Court concludes that the size of this class warrants class action treatment, but the size is not of such magnitude that a class action would be unmanageable. *Compare* Green v. Wolf Corp., 406 F.2d 291 (2d Cir.

1. Defendants labor under the assumption that there is but one class of persons plaintiff seeks to represent,—a class which includes persons who have claims only under section 11 of the 1933 Act and persons who have claims under both section 11 of the 1933 Act and section 17(a) of the 1933 Act and section 10(b) of the 1934 Act. However, plaintiff does not appear to coalesce these two groups of persons into one class, although his memoranda were murky on this point. Plaintiff seeks to represent two separate classes: (1) all persons asserting claims under section 11 of the 1933 Act and (2) all persons asserting claims under section 17(a) of the 1933 Act and section 10(b) of the 1934 Act. Though there inevitably will be considerable overlap between the two classes, the class claiming under section 11 of the 1933 Act is separate and distinct from the class claiming under section 17(a) of the 1933 Act and section 10(b) of the 1934 Act. Consequently, defendants' arguments—which ignore the existence of separate classes and attempt to show inadequacy of representation and atypicality of plaintiff's claims by "crossing class lines"—are inapposite. To insure that sight of this important factor is not lost, the Court, in its analysis of the relevant factors set forth in Rule 23, will discuss each class separately.

1968), *with* Eisen v. Carlisle & Jacquelin (II), 391 F.2d 555 (2d Cir. 1968). Every purchaser of Tenney stock until February, 1963 (the date as of which the market price of Tenney stock no longer reflected the effect of the allegedly false Registration Statement) would appear to be a member of the class. Plaintiff asserts that as of February 15, 1961 at least 2,286 persons held stock in Tenney, and as of January 31, 1963, the number had grown to 3,872 persons. Moreover, the class includes all of those purchasers of Tenney stock prior to February, 1963, who already had sold their shares as of that date and were thus not included in the 3,872 number. Since Tenney was actively traded over the counter, at declining prices, in 1962 and early 1963, the number of these persons who sustained losses is undoubtedly numerous. The Court need not inquire further at this juncture as to the precise number in the class. Should it later appear that the actual size of the class is much smaller than the figures asserted by plaintiff, the class allegations can be struck at that time.[2]

Furthermore, the Court is of the opinion that the number of members in the class should be determined by including all those who have claims raising common questions of fact or law, and not necessarily these who, for convenience in trying the suit, are divided into sub-classes. Thus, the Court will not segregate, at this time, those who have to prove reliance under section 11(a) from those who do not. Since each of these groups must first establish falsity, their total number is properly considered together in determining the size of the class.

*Common Questions of Fact or Law—Rule 23(a)(2)*

The prime element for establishing liability under section 11 of the 1933 Act is proof that the Registration Statement and prospectus were materially false and misleading. Since each member of the class would have to establish this prerequisite to relief, there can be no doubt that the requirement that there be questions of fact common to the class is met. Escott v. Barchris Construction Corporation, 340 F.2d 731, 733 (2d Cir.), cert. denied sub nom. Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed. 2d 63 (1965); Mersay v. First Republic Corp. of America, 43 F.R.D. 465 (S.D. N.Y.1968).

*Typicality of Plaintiff's Claims—Rule 23(a)(3)*

Insofar as plaintiff seeks recovery under section 11 of the 1933 Act, his claims are typical of all others in the class who would seek recovery under that section. Having purchased 100 shares on November 30, 1961—before Tenney's twelve-month statement was made generally available—plaintiff can recover dam-

2. Defendants have urged that the Court conduct a hearing at this stage to determine the exact number of members in the class. It is their contention that a recent rise in the price of Tenney stock (now Omega Equities Corporation) may have greatly depleted the number of persons who sustained losses or will sustain losses with respect to Tenney stock. The Court rejects this position.

The proposed hearing would be a waste of effort for the Court and parties. Since every member of the class would have to prove his damages individually before obtaining judgment, the Court will be able at that time to determine whether the action can be continued on a class basis. Such a hearing would not preclude the need for notice or in any other way conserve resources should it ultimately be determined that class action treatment was not warranted.

Moreover, the Court is not convinced that, on a motion for an order determining the maintainability of the suit as a class action, the Court need consider the question of how many members of the class have actually sustained damage. The numerosity of the class should be determined on the basis of factors ascertainable by the Court at the time suit is brought (or perhaps at the time the motion is made), such as the number of shareholders who *might* have such a claim— and not the number of those who will ultimately recover.

ages respecting these shares without proof of reliance. Nor does his right to relief require his proving anything in addition to or less than all other shareholders who purchased before February, 1962 and who rely on section 11.

Moreover, since plaintiff also purchased 200 shares in January, 1963, his right of recovery with respect to these is conditioned on proof that he relied on the material misstatements when he purchased this block of shares. This is proof of the same nature that all purchasers of Tenney stock after February, 1962 would have to offer to support their section 11 claims.

▪ It has been suggested that the requirement of typicality means only that plaintiff not have interests in conflict with those of other members of the class. Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968); 2 W. Barron & A. Holtzoff, Federal Practice & Procedure § 562 n.3 (Supp. 1968). Insofar as plaintiff relies on section 11 to gain recovery, his interests are not in any manner adverse to or in conflict with others in the same class.

*Adequacy of Representation—Rule 23(a) (4)*

▪ The Court has also concluded that plaintiff will adequately represent the class. His counsel is experienced in litigation of this nature, and, as indicated, plaintiff's interests are co-extensive with and not antagonistic to those of the entire class. The circumstances that no other shareholder has chosen to intervene in the action or initiate his own

lawsuit, and that plaintiff's prospective financial recovery is limited, are not relevant to the question of adequacy of representation. Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968); Eisen v. Carlisle & Jacquelin (II), 391 F.2d 555 (2d Cir. 1968).

*Predominance of Common Questions— Rule 23(b) (3)*

▪ Plaintiff seeks to maintain the class action under Fed.R.Civ.P. 23(b) (3).[3] That subsection requires the Court to be satisfied that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The chief substantial litigable issue with respect to the section 11 claim is the falsity of the Registration Statement and prospectus. This is a mixed question of fact and law which is common to the entire class. Common questions are also presented with respect to the affirmative defenses contained in section 11(b), 15 U.S.C. § 77k(b) (1964). Individual issues are those of damages, reliance (for those shareholders purchasing after February, 1962), and affirmative defenses directed at individual plaintiffs. Section 11(e), 15 U.S.C. § 77k(e) (1964).

The common issues pertain to the question of liability. The individual issues pertain to the right of a particular plaintiff to recover once liability to the general class is established. As such the common issues will predominate, at least at the outset of trial. Mersay v. First

---

3. "(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

＊　　＊　　＊　　＊　　＊

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Republic Corporation of America, *supra. Cf.* Green v. Wolf, *supra* (split trials on issues of reliance and damages may be had after central issue of fraud under § 10(b) of the 1934 Act is tried on a class basis).

*Superiority of the Class Action—Rule 23 (b) (3)*

In Green v. Wolf Corp., *supra*, the Court of Appeals indicated that the relevant question in deciding whether a class action is superior to other methods of adjudicating the controversy, is the number of persons injured by the alleged violation. The Court there found significant the circumstance that, though there were as many as 2200 persons who might have been harmed, no one "seems to have been injured seriously enough to motivate the initiation of a solely individual action." 406 F.2d at 301. In this case, as many as 3800 persons may have sustained injury as a result of the allegedly false Registration Statement. This number makes the class action most advantageous.

Moreover, a class action must be deemed the only practical method of litigating these issues when the complex nature of the litigation and the comparatively small individual financial interests are considered. The alternative to the class action, in cases such as these, undoubtedly is compromise, settlement and voluntary discontinuance of an action that may be just and proper.

The Court concludes that vis-á-vis the section 11 claims, the class action may be maintained.

## III.

### SECTION 10(b) CLASS

Though the question is more complex when the claims under section 10(b) of the 1934 Act [4] are considered, the Court concludes that the class action is maintainable as to these, as well.

*Numerosity; Adequacy of Representation; Superiority of Class Action*

The class of persons plaintiff will represent in the litigation of these claims is not as expansive as the class constituted with respect to the section 11 claims. The group of original exchange offerees will presumably recoup all of their damages should plaintiff succeed on his section 11 claim, and, having purchased their shares directly from the corporation, this group has no interest in an action charging market manipulation. Nevertheless, the class consisting of those shareholders who purchased over the counter and who may have been injured by defendants' violations of section 10(b), is of a size sufficiently large as to make joinder of all members as named plaintiffs impracticable.

Between February 15, 1961 and January 1, 1963, there was a net increase of nearly 1600 shareholders. Each of these persons purchased their shares over the counter; and thus would appear to be members of the class. In addition, the class would include all over the counter purchasers who had sold their shares at a loss prior to January 1, 1963. That such a number is sufficiently great to make class action treatment available and desirable cannot be doubted. *E.g.* Weisman v. MCA, Inc., 45 F.R.D. 258 (D.Del.1968) (class of 373 persons raising section 10(b) claims). And, as noted in Part II of this opinion, the Court need not, at this time, inquire further and determine the precise number of persons with viable claims. *See* note 2, *supra.*

The Court is also satisfied that a class action is the most advantageous method of litigating these claims and that plaintiff will adequately represent the class, substantially for the reasons set forth in Part II of this opinion.

4. In referring to claims under section 10(b) of the 1934 Act, the Court includes therein any and all claims under section 17(a) of the 1933 Act, there being no material distinction between the two sections in the context of this particular lawsuit.

Thus, the Court turns now to the remaining, and comparatively more difficult, questions:

(1) Are there common issues of law or fact?

(2) Are plaintiff's claims typical?

(3) Do the common issues predominate over the issues individual to each member of the class?

*Common Questions of Fact or Law*

The complaint pleads, in general terms, that defendants made numerous representations and statements, the substance of which is set forth in greater detail. Plaintiff's position is that the misstatements and misrepresentations contained within, and the material omissions from, the Registration Statement and the prospectus, the monthly bulletins, and the annual report for fiscal 1961, were interrelated and cumulative; that they were all integral elements in the fraudulent activities and practices; and that they represented a continuous course of conduct in violation of section 10(b).

The Court agrees with plaintiff that there will be questions of fact or law common to the class on the trial of the section 10(b) claim, irrespective of which particular misstatement the individual claimant relied upon, because the various written statements were not independent and unrelated.[5]

Plaintiff contends that the failure to indicate in all of the written statements that the cash distributed to shareholders would not be, or was not, derived from the net cash flow of the company was materially misleading; and that, because

of certain facts known to defendants at the time the various statements were made, these omissions were fraudulent.

The second principal allegation is that the projection of anticipated earnings contained in both the Registration Statement and prospectus, and the actual earnings reported in the monthly communications and annual report, were materially false and fraudulent as a result of the same known facts.

Proof of these allegations will require substantial testimony and exhibits. They are issues which every purchaser of Tenney stock would have to prove; and trial of this action on a class basis would, consequently, serve the interests of economy and practicability.

The Court of Appeals in Green v. Wolf Corp., *supra*, found that plaintiff there, in proving allegations of a strikingly similar nature, would provide proof needed by the entire class, regardless of when that plaintiff actually purchased his shares. As a result, the Court held that plaintiff had satisfied the requirement that questions common to the class exist. 406 F.2d at 299–300.

Similarly, the issue of intent to defraud is common to every member of this class, regardless of when that individual purchased his shares. Since the element of scienter is more easily inferrable and proven from the existence of a continuous course of conduct, plaintiff's proof of the history and background of the corporation, market activity of the stock, and repeated misstatements, would yield substantial proof that all members of the class would, otherwise, have to adduce

5. Defendants argue that plaintiff's claims do not raise common questions and are not typical of those of the class because plaintiff can recover full damages by proving fraud in the monthly communications or annual report. Thus, they contend, plaintiff has no inducement to prove fraud in the Registration Statement for purposes of his recovery—proof that would be necessary for those members of the class who purchased shares over the counter before the monthly communica-

tions began. This argument must be rejected because the material mistatements were similar in nature and because the fraud is alleged to have occurred by means of a common and continuous course of conduct. As will be more fully developed, *infra*, proof of these allegations will benefit all members of the class and, thus, the purpose of the class action device would be served if plaintiff is permitted to represent these persons.

separately. *Cf.* Green v. Wolf Corp., *supra* at 300.

Defendants argue that the issue of manipulation is an individual rather than common question because proof by plaintiff of a manipulated price at the time of his purchases would not prove the existence of manipulation for others in the class. Plaintiff specifically alleges that the false statements were made for the purpose, and had the effect, of creating and maintaining a market in Tenney stock and that the additional false statements were made for the purpose, and had the effect, of (1) causing the price of Tenney shares to rise, and (2) intensifying market activity and induce purchases. (¶ 16(a), (b), (c). Because the allegations essentially charge continuous manipulation, this issue is common to the entire class. Green v. Wolf Corp., *supra* at 300.

*Typicality*

The Court's inquiry with respect to the typicality of plaintiff's claims is a limited one. The Court of Appeals, in Green v. Wolf Corp., *supra*, appears to have concluded that this issue is much the same as that just discussed under the previous sub-heading. Since the alleged misstatements in that case appeared in all of the documents, the Court determined that the claims of plaintiff were such that it "would be logical and efficient to permit Green to represent all purchasers." 406 F.2d at 299.

The same rationale is applicable to this case. In view of the circumstances that all of the alleged misrepresentations and omissions deal with essentially the same information, and that the claim of price manipulation is based on a consistent course of conduct, plaintiff's claims are typical.

Making the inquiry suggested by the court in Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968), does not alter this conclusion. Plaintiff's claims are not antagonistic to, or even distinguishable from, those of the other members of the class. As did all other members of the class, plaintiff purchased his shares over the counter, allegedly relying on the claimed misstatements and the manipulated market price.

Furthermore, plaintiff was not even connected with the corporation as an insider, nor was he an original exchange offeree, as plaintiff in *Mersay* was— facts which, nevertheless, did not preclude that court from finding Mersay's claims typical. Because plaintiff "alleges no facts or legal arguments peculiar to himself," but "[r]ather, he alleges a 'common nucleus of operative facts' applicable to the class as a whole," Mersay v. First Republic Corporation of America, 43 F.R.D. at 468, the Court reiterates its conclusion that plaintiff's claims are typical.

*Predominance of Common Questions*

Once it is established that the various misstatements, misrepresentations and omissions are similar and that the charge of manipulation does not refer to any particular period, it becomes manifest that, as with the claims under section 11, the questions common to this class predominate over individual issues. *See*, *e.g.*, Green v. Wolf Corp., *supra*; Mersay v. First Republic Corporation of America, *supra*; Dolgow v. Anderson, 43 F.R. D. 472 (E.D.N.Y.1968); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966); *cf.* Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968).

Should it later be determined that separate trials are necessary on the issue of reliance or upon any other issue that is individual to the members of the class, the trial court can order such separate trials, Green v. Wolf Corp., *supra*, or modify this Court's order and determination that the class action is maintainable and limit the class action to the trial of specific issues. Fed.R.Civ.P. 23 (c) (4) (A).

Having met all the criteria set forth in Rule 23, the Court is of the opinion

that the section 10(b) claims may be maintained on a class basis.

## IV.

*Definition of the Various Classes; Necessity for a Pre-Trial Hearing; Notice*

The Court is of the opinion that the two classes constituted above—the section 11 class and the section 10(b) class —need not, at the present time, be divided further into sub-classes; each group is sufficiently indentifiable for purposes of furnishing notice and any additional pre-trial procedures that may ensue. The trial court, of course, can make such additional orders in this respect, as it deems appropriate. Fed.R.Civ.P. 23(c) (4) (B).

The Court also rejects defendants' request that a pre-trial evidentiary hearing be held at which time plaintiff would have to prove a *prima facie* case. Judge Metzner's reasoning, in Mersay v. First Republic Corporation of America, *supra,* persuades the Court that such a hearing is not warranted at this stage in the litigation. Moreover, since plaintiff must bear the burdens of furnishing notice to the class, Eisen v. Carlisle & Jacquelin (II), 391 F.2d 555, 568 (2d Cir. 1968), there are no financial considerations necessitating a pre-trial hearing. *See* Green v. Wolf Corp., *supra,* at 301–302 n. 15.

Rule 23(c) (2) requires that individual notice be furnished all members of the class who can be identified through reasonable effort. Tenney's stock transfer records should contain the identity of each person who is a member of each class. Thus, the Court hereby directs that individual notice be sent to each such member.

Plaintiff, apparently, has already obtained copies of Tenney's stock transfer records and, consequently, is now in a position to prepare a proposed form of notice and a complete listing of all members of each class by name and address. Plaintiff shall submit such proposed form of notice and listing to the Court for approval together with a proposed order pursuant to Fed.R.Civ.P. 23(c) (1) within twenty days from the date of the filing of this opinion. Defendants shall have seven days, thereafter, to object and/or submit their proposed form of notice and counter-order.

So ordered.

## IV.

As the Court indicated in Part I of this opinion, plaintiff should have further amended his amended complaint prior to moving pursuant to Rule 23(c). The Court hereby grants plaintiff twenty days from the date of the filing of this opinion to file and serve a second amended complaint which shall conform to the views expressed in this opinion.

So ordered.