**UNICORN FIELD, INC., Plaintiff,**

v.

**The CANNON GROUP, INCORPORATED et al., Defendants.**

**No. 72 Civ. 3014.**

United States District Court,
S. D. New York.

July 26, 1973.

---

Schlanger, Blumenthal & Lynne, New York City (Richard L. Blumenthal, New York City, of counsel), for plaintiff.

Golenbock & Barell, New York City (Arthur M. Handler, New York City, of counsel), for defendants The Cannon Group, Inc., Dennis Friedland, Christopher C. Dewey, Irwin M. Cymrot, William H. Kent and Ernest Sands.

Immerman, Immerman & Crames, New York City, for defendants Collins Securities Corp. and Timothy Collins.

## OPINION

BAUMAN, District Judge.

Plaintiff has moved for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure designating this a class action. Defendants do not contest the propriety of some form of class action treatment; the controversy before the court concerns rather the manner in which the class should be defined, the notice it should be provided, and certain jurisdictional questions the significance of which is largely academic.

The Cannon Group ("Cannon"), a New York corporation engaged, directly and through subsidiaries, in the production and distribution of feature length motion pictures, is a defendant as are some of its officers and directors. The action arises out of a public offering of 300,000 shares of Cannon common stock pursuant to a registration statement filed under the Securities Act of 1933 which became effective on February 15, 1972. Defendant Collins Securities Corporation ("CSC") was the principal underwriter of the offering, and defendant Timothy Collins is both a director of Cannon and president of CSC. Defendant Peat, Marwick, Mitchell & Co. is the accounting firm which prepared and certified the financial statements reproduced in the registration statement.

Plaintiff is a closely held corporation which, according to an affidavit submitted by its president, is "engaged in furnishing services of artists and writers for theatrical purposes." On February 15, 1972 it purchased 200 shares of Cannon for $800 and sold them three days later for $716. It sues on behalf of all those who purchased Cannon stock between February 15 and July 18, 1972, the date of the filing of this complaint.

The complaint contains two causes of action, both of which are asserted against all defendants. The first alleges violation of numerous provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934.[1] The second is premised upon allegations of common law fraud. The essence of the violation charged is the dissemination of a registration statement and prospectus containing false and misleading statements and omitting certain material information. Among the misrepresentations alleged are: the overstatement of assets and understatement of liabilities; the overstatement of net income; the false statement that Cannon expected no substantial losses from the release of certain motion pictures; the failure to disclose that Cannon possessed insufficient capital, facilities and personnel to enable it to produce and distribute motion pictures on a large scale; the failure to disclose Cannon's inability to obtain outside financing for its ventures and its consequent reliance on funds provided by certain of its officers.

Defendants oppose plaintiff's motion in three respects only. They contend, first, that the complaint fails to state a cause of action under §§ 5, 12, and 17(a) of the Securities Act or under § 18 of the Securities Exchange Act and move that references to these statutes be stricken Second, they argue that plaintiff's definition of the class is erroneous and that this court should instead designate two subclasses, one of claimants under § 11 of the Securities Act and the other under § 10(b) of the Securities Exchange Act. Third, defendants urge that plaintiff bear the entire cost of notice, which should be effected by either registered or certified mail, and that the notice include a proof of claim form.

---

1. In its amended complaint, filed January 26, 1973, plaintiff invokes the jurisdiction of this court pursuant to §§ 5, 11, 12 and 17(a) of the Securities Act and §§ 10(b) and 18 of the Securities Exchange Act. In the original complaint plaintiff also invoked § 16 of the Securities Exchange Act but appears subsequently to have seen the correctness of defendants' argument that this section, which covers only securities of a corporation registered on a national exchange or pursuant to § 12(g) of the Securities Exchange Act, is inapplicable.

■■ As has already been noted, defendants do not contest the propriety of class action treatment; they do not, for example, contend that this action fails to meet the requirements of Rule 23(a) and 23(b)(3).[2] This abstention. is ·surely prudent, for it is now well recognized that the class action is peculiarly appropriate to claims of violation of the securities laws. Green v. Wolf Corporation, 406 F.2d 291 (2nd Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed. 2d 459 (1969); Fischer v. Kletz, 41 F.R. D. 377 (S.D.N.Y.1966). In fact, our Court of Appeals has noted that questions of law and fact common to a class are likely to predominate where a suit is based on a single written document charged with misrepresentations and omissions. Korn v. Franchard Corporation, 456 F.2d 1206 (2nd Cir. 1972).

Neither do defendants put in question the adequacy of the representation this plaintiff will afford the class (Rule 23(a)(4)) and, having carefully reviewed the papers submitted by plaintiff's counsel, I am satisfied that they have demonstrated sufficient familiarity with such cases to furnish adequate representation.

### I.

The first point of contention is whether the first cause of action sets forth a violation of §§ 5, 12, and 17(a) of the Securities Act, and § 18 of the Securities Exchange Act. I have already termed this largely academic in that defendants do not contest this court's jurisdiction pursuant to § 11 of the Securities Act and § 10(b) of the Securities Exchange Act. Hence, even were I to accept defendants' argument that count would survive. Nonetheless, I deem this aspect of defendants' motion as an effort to narrow the issues prior to trial, and an effort to reduce, even slightly, the complexity of issues that a class action necessarily entails. Accordingly, I shall address it.

■ For reasons which will shortly be apparent, I turn first to § 12 of the Securities Act, 15 U.S.C. § 77($l$).[3] The

2. Rule 23(a) provides:
"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
Rule 23(b)(3) provides:
"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

3. 15 U.S.C. § 77$l$:
"Any person who—
(1) offers or sells a security in violation of section 77e of this title, or
(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements,

weight of authority has construed this statute to permit only suits by a buyer against his immediate seller. The definitive interpretation can be found in 3 L. Loss, Securities Regulation, at 1719–20:

"Subject to these exceptions involving controlling persons and agents, it seems quite clear that § 12 contemplates only an action by a buyer against *his immediate seller*. [Italics in original.] That is to say, in the case of the typical 'firm-commitment underwriting,' the ultimate investor can recover only from the dealer who sold to him. But the dealer in turn can recover over against the underwriter, and the latter . . . against the issuer . . . ."

The author proceeds to contrast a "firm commitment underwriting", where the buyer can only recover against his immediate seller, with a "best efforts underwriting", where the underwriter is deemed the agent of the issuer, and where consequently the buyer can sue the issuer directly.[4] This restrictive reading of § 12 has been widely adopted. See Winter v. D. J. & M. Investment and Construction Corp., 185 F.Supp. 943 (S. D.Cal.1960); DeMarco v. Edens, 390 F.2d 836 (2nd Cir. 1968);[5] Ruszkowski v. Hugh Johnson & Co., 302 F.Supp. 1371 (W.D.N.Y.1969); Benzoni v. Greve, 54 F.R.D. 450 (S.D.N.Y.1972); Jackson Tool & Die, Inc. v. Smith, 339 F.2d 88 (5th Cir. 1964); Lynn v. Caraway, 252 F.Supp. 858 (W.D.La.1966), affd. 379 F.2d 943 (5th Cir. 1967), cert. denied, 393 U.S. 951, 89 S.Ct. 373, 21 L.Ed.2d 362 (1968). *Per contra*, Buchholtz v. Renard, 188 F.Supp. 888 (S.D.N.Y.1960); Value Line Fund, Inc. v. Marcus, CCH Fed.Sec.Law Reporter, ¶ 91,523 (S.D.N.Y. 1965).

The underwriting agreement here in question (annexed as Exhibit A to the affidavit of Arthur M. Handler) is indisputably of the "firm commitment" variety. It provided that Cannon and the Wall Street Venture Capital Corporation (not named here as a defendant) would sell to the twenty-four members of the underwriting group (of which CSC was the representative) 300,000 shares of Cannon stock at $3.60 per share and contemplated that the underwriting group would then resell the shares to the public. (Paragraph 3 of the Agreement). At the time of the sale to the underwriting group, as is typical in a firm commitment underwriting, Cannon relinquished all further interest in the shares.

■ In the course of discovery undertaken during the pendency of this motion, plaintiff admitted having purchased the stock from Phillips, Appel & Walden, a brokerage firm which was not a member of the original underwriting group. Hence even were I to follow those few courts who have deemed the relationship between issuer and underwriter sufficiently close to bring the latter within the definition of "seller", defendants would not be exposed to liability under § 12. In any event, plaintiff has not named Phil-

in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

4. For a thorough discussion of the distinction between "firm commitment" and "best efforts" underwriting, see 1 L. Loss, Securities Regulation 163–172.

5. In *DeMarco*, our Court of Appeals even questioned whether an issuer could be deemed a "seller" within the meaning of § 12 in a "best efforts underwriting." The court pointed out that a best efforts underwriting is not always indicative of an agency relationship. 390 F.2d at 841, fn. 3.

lips, Appel & Walden as a defendant, and that firm is the only entity from which plaintiff could obtain relief under § 12 as I read it. Defendants' motion to strike all reference to § 12 in the complaint is hereby granted.

■ I also conclude that this case is beyond the jurisdictional ambit of § 5 of the Securities Act, 15 U.S.C. § 77(e).[6] That section makes no provision for a private right of action; the only civil remedy available to private parties is that specified in § 12(1) of the Securities Act, set out at footnote 3, supra. The correct analysis of the scope of the private remedies available under § 5 was enunciated in Greater Iowa Corporation v. McLendon, 378 F.2d 783, 790 (8th Cir. 1967):

> "The intent of Congress is clear. Section 12 provides a private civil remedy to 'purchasers'. We think this is the civil remedy given to private parties by the framers of the Act, and excludes establishment of additional private civil remedies. Had Congress desired to extend the private civil remedy it could have done so by the addition of only a few words. Its failure to do so, and its express limitation to 'purchasers' is a positive indication that Congress desired these provisions privately enforced by purchasers only. It is our conclusion that private civil liability for violations of § 5(a) and § 17(a) exist [sic] only when the provisions of § 12 (15 U.S.C. § 77*l*) are met."

This is also the interpretation adopted by Loss at 3 Securities Regulation 1785. While fully subscribing to the line of authority commencing with Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D. Pa.1946) that found an implied civil remedy under § 10(b) of the Securities Exchange Act, the author notes that "(t)he 1933 Act is a much narrower statute." He concludes that § 12 provides the exclusive civil remedy for violations of § 5, and that no action lies under § 5 that does not meet the jurisdictional requisites of § 12 as well. See also, Trussell v. United Underwriters, Ltd., 228 F.Supp. 757 (D.Colo.1964); S. E. C. v. Continental Tobacco, 463 F.2d 137 (5th Cir. 1972). As I have already noted, §

---

6. 15 U.S.C. § 77e:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

(b) It shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security with respect to which a registration statement has been filed under this subchapter, unless such prospectus meets the requirements of section 77j of this title; or

(2) to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of subsection (a) of section 77j of this title.

(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title."

12 only permits an action by a buyer against his immediate seller; it therefore follows that none of the parties named as defendants here can be sued by plaintiff under § 5.

Defendants, citing the same passage in Loss (3 Securities Regulation 1785), also urge that no such action lies under § 17(a) of the Securities Act, 15 U.S.C. § 77q(a)[7] either. This question, as Judge Frankel has noted, is still an open one. Pinto v. Maremont Corp., 326 F. Supp. 165 (S.D.N.Y.1971). I am aware, however, of the compelling arguments adduced by Judge Friendly (which rely heavily on the opinions of many of the original draftsmen of the securities laws) that § 17(a) "was intended only to afford a basis for injunctive relief and, on a proper showing, for criminal liability, and was never believed to supplement the actions for damages provided by §§ 11 and 12." S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833, at 867 (2nd Cir. 1968). See also, Donlon Industries, Inc. v. Forte, 402 F.2d 935 (2nd Cir. 1968); Weber v. C. M. P. Corp., 242 F.Supp. 321 (S.D.N.Y.1965); Dyer v. Eastern Trust & Banking Co., 336 F. Supp. 890 (D.Me.1971). On the other hand, certain judges in this district and elsewhere have found such a private remedy implicit. See Pfeffer v. Cressaty, 223 F.Supp. 756 (S.D.N.Y.1963); Dack v. Shanman, 227 F.Supp. 26 (S.D. N.Y.1964); Value Line Fund, Inc. v. Marcus, CCH 1 Fed.Sec.Law Reporter ¶ 91,523 (S.D.N.Y.1965); Klein v. Spear, Leeds & Kellog, 306 F.Supp. 743 (S.D. N.Y.1969); Dorfman v. First Boston Corporation, 336 F.Supp. 1089 (E.D.Pa. 1972); Lynn v. Caraway, supra.

At this stage of the proceedings, however, I need not attempt to resolve this extremely vexing question. As Judge Friendly pointed out in *Texas Gulf Sulphur*, and Judge Kaufman reiterated in Globus v. Law Research Service, Inc., 418 F.2d 1276 (2nd Cir. 1969), there is little point in denying the existence of an action under § 17(a) once jurisdiction has been established under § 10(b) of the Securities Exchange Act. See also, Weiss v. Tenney Corporation, 47 F.R.D. 283 (S.D.N.Y.1969); Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466 (D.Del. 1962). Because defendants correctly acknowledge the propriety of § 10(b) jurisdiction, the question of § 17(a) jurisdiction is purely theoretical.

I also conclude that this complaint fails to state a cause of action under § 18 of the Securities Exchange Act, 15 U.S.C. § 78r.[8] In their initial memo-

---

7. 15 U.S.C. § 77q(a):

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

8. 15 U.S.C. § 78r:

"(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and

randum, defendants argued that this statute only applies to documents filed with a national securities exchange and is irrelevant here because Cannon is not a member of any national exchange and has made no such filings. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2nd Cir. 1951); Bank of America National Trust & Savings Assn. v. Douglas, 70 U.S.App.D.C. 221, 105 F.2d 100 (1939); Gann v. Bernzomatic Corporation, 262 F.Supp. 301 (S.D.N.Y.1966). Plaintiff in its reply memorandum countered with the equally unimpeachable assertion that the statute also applied to "any undertaking contained in a registration statement as provided in" § 15 of the Securities Exchange Act. See Heit v. Weitzen, 402 F.2d 909 (2nd Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); Fischer v. Kletz, 266 F.Supp. 180 (S.D.N.Y.1967). It pointed out that Cannon had filed several such documents, including a statement of earnings for 1971, as special reports required by § 15(d).

Defendants' rejoinder here is, however, conclusive. They establish that Cannon did not file the § 15(d) report until June, 1972, some four months after plaintiff bought and sold its Cannon stock. Plaintiff obviously cannot claim to have relied on any statement in the § 15(d) report, and therefore can state no claim under § 18. Since plaintiff is not possessed of such a claim it scarcely requires mention that it cannot purport to represent others who may have a valid § 18 claim. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

In sum, defendants' motion to strike from the complaint all reference to §§ 5 and 12 of the Securities Act, and § 18 of the Securities Exchange Act is granted. Because defendants concede jurisdiction under § 10(b) of the Securities Exchange Act, I need not decide their motion to strike the reference to § 17(a) of the Securities Act.

## II.

Plaintiff proposes to define the class in the instant action as "all persons who purchased securities of Cannon from February 15, 1972 to July 18, 1972." (Amended Complaint, paragraph 7). Defendants find this definition insufficiently precise. They propose that, pursuant to Rule 23(c)(4)(B), I designate two subclasses, one consisting of those possessing a claim under § 11 of the Securities Act, the other of those possessing a § 10(b) claim.[9] The § 11 subclass would consist of all who were original purchasers of the 300,000 shares of Cannon stock offered pursuant to the February 15 registration statement as well as those who purchased such shares subsequently between February 15 and July 18, 1972. The § 10(b) class would consist of those who purchased Cannon stock (whether the 300,000 shares issued under the prospectus or other outstanding shares) during the February 15 to July 18 period, and who suffered losses as a result of misstatements or omissions in the February 15 prospectus.

had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

(b) Every person who becomes liable to make payment under this section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.

(c) No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued."

9. A § 10(b) class would be coterminous with a § 17(a) class, and thus the creation of a third subclass is unnecessary. As noted above, there is no meaningful difference between the § 17(a) and § 10(b) claims in this action.

■ It is now well settled in this Circuit that § 11 of the Securities Act, 15 U.S.C. § 77k,[10] permits recovery only by purchasers of the shares covered by the defective registration statement or by those who can trace their purchases directly to such shares. Barnes v. Osofsky, 373 F.2d 269 (2nd Cir. 1967); Colonial Realty Corporation v. Brunswick Corporation, 257 F.Supp. 875 (S.D.N.Y. 1966); 3 Loss, Securities Regulation 1731 fn. 160. In reaching this result Judge Friendly noted in *Barnes* the anomaly of conferring a § 11 cause of action on those open market purchasers who could trace their shares to an offering and denying it to those who could not. He nevertheless determined that the legislative history and the plain meaning of § 11 compelled that conclusion.

In support of their position defendants cite two cases in this district, Weiss v. Tenney Corporation, 47 F.R.D. 283 (S.D. N.Y.1969) and Wolfson v. Solomon, 54 F.R.D. 584 (S.D.N.Y.1972), in which separate subclasses were designated based on § 11 and § 10(b) claims. In *Weiss,* Judge Herlands noted: "[t]hese two causes of action (though they may arise from a common nucleus of operative facts) are distinct in terms of legal theory and requirements of proof. They differ as to the identity of those persons who, in each case, can prove a viable claim." 47 F.R.D. at 287. These observations are unquestionably correct, and the distinctions between the two causes of action are worth mentioning briefly.

■ First, in a § 11 action, as has just been noted, recovery is limited to purchasers of shares covered by the defective registration statement. There is no such limitation in a § 10(b) action; any open market purchaser would have standing to sue. Secondly, recovery under § 11 is limited to the difference between the actual purchase price of the shares (not exceeding the initial offering price) and the value of the shares at the time suit is brought or the proceeds received upon sale before or after com-

---

10. 15 U.S.C. § 77k provides, in pertinent part:

"(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—

(1) every person who signed the registration statement;

(2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profes-

sion gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security.

If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person."

mencement of suit. § 11(e). Third, the burden of proof in a § 11 action is far less onerous. With certain exceptions plaintiff need only demonstrate that the registration statement and prospectus were materially false and misleading and need not prove fraudulent intent on the part of the issuer. And, as Judge Friendly notes in Barnes v. Osofsky, supra, reliance on the part of the purchaser is conclusively presumed. Although it is no longer necessary to prove reliance in a § 10(b) action where the gravamen is nondisclosure, Crane Co. v. Westinghouse Air Brake, 419 F.2d 787 (2nd Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970), a showing of some causal nexus between the deception and the injury is still required. Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Swanson v. American Consumer Industries, 415 F.2d 1326 (7th Cir. 1969); 6 L. Loss Securities Regulation 3879–3880.

■ I am therefore satisfied that the causes of action are sufficiently distinct to make the designation of two subclasses appropriate, and I therefore follow *Weiss* and *Wolfson,* supra. I must nevertheless add one caveat. Plaintiff points out that the outstanding shares of Cannon at the time of the February 15 offering were in the hands of a very few shareholders; furthermore, it is argued, there were very few, if any, shares traded after February 15 other than those issued pursuant to the registration statement. Plaintiff thus suggests that there is total overlap between the § 11 class and the § 10(b) class, and thus the creation of subclasses is a needless complication. On the record before me I can reach no such conclusion. If, however, it appears after discovery that there were no shares other than the 300,000 being traded, I shall consider amending the order defining the class. Rule 23(c)(1) contemplates just such an amendment. At this juncture, however, defendants' motion that subclassifications of § 10(b) and § 11 claimants be designated is hereby granted.

### III.

■ There remains only the manner in which notice should be provided. In accordance with the prevailing rule, I direct the plaintiff to bear the cost of notice to the class. Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2nd Cir. 1968) (*Eisen II*); Eisen v. Carlisle and Jacquelin, 479 F.2d 1005 (2nd Cir., 1973) (*Eisen III*); Herbst v. Able, 47 F.R.D. 11 (S.D.N.Y.1969). Aside from proffering conclusory arguments concerning the "obvious merits of this action", plaintiff has made no showing that the circumstances of this case would bring it within any of the exceptions to the general rule suggested in Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969). I also conclude that individual notice by first class mail constitutes the "best notice practicable" within the meaning of Rule 23(c)(2). See Weiss v. Tenney, supra; Berland v. Mack, supra; Korn v. Franchard Corporation, 50 F.R.D. 57 (S.D.N.Y.1970). Defendants' suggestion that notice be effected by registered or certified mail seems nothing more than an attempt to impose an additional expense on the plaintiff.

I also conclude that a "proof of claim" form shall be mailed to class members along with the class notice. As Judge Mansfield noted in Korn v. Franchard, supra, this is a practice that has gained favor in this district and elsewhere. See Briskin v. Glickman, 66 Civ. 4301 (S.D. N.Y.1970) (Weinfeld, J.); Harris v. Jones, 41 F.R.D. 70 (D. Utah 1966); Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968); Iowa v. Union Asphalt & Roadoils, Inc., 281 F. Supp. 391 (S.D.Iowa 1968); Biechele v. Norfolk & Western Railway, 309 F.Supp. 354 (N.D.Ohio 1969). His enumeration of the advantages of such a procedure is most persuasive: it may aid in defining the exact size of the class and in ascer-

taining the adequacy of plaintiff's representation of class interests; and it may help clarify the causal connection between the alleged misrepresentation and the injury that is obviously critical in a securities fraud action.

Plaintiff's contention that this device was severely condemned by our Court of Appeals in Korn v. Franchard Corporation, 456 F.2d 1206 (2nd Cir. 1972), is inaccurate. The court did criticize the use Judge Mansfield made of these forms, particularly the inferences he drew from the nature and quantity of the responses. There was no criticism, explicit or implicit, of the proof of claim device *per se*. There has, admittedly, been some contrary discussion of the device in academic fora. See Miller, "Problems in Administering Judicial Relief in Class Actions Under Federal Rule 23(b)(3)", 54 F.R.D. 501. The author notes, at 505, that deferring the mailing of the proof of claim until after liability has been determined "has the obvious advantage of avoiding considerable paper work and expense in cases where no liability is found." The obvious rejoinder is that paper work is unavoidable in a class action, and the simultaneous mailing of the claim form and the class notice renders the additional expense minimal.

I decline, however, to adopt defendants' suggestion that the claim form include a provision that the action will be dismissed as to any person who fails to file a claim. Although this provision has been employed in cases in this district, see Briskin v. Glickman, 66 Civ. 4301 (S.D.N.Y.1970) and Alpine Pharmacy v. Chas. Pfizer & Co., 69 Civ. 559 (S.D.N.Y.1969), I join Judge Mansfield in rejecting its use. In *Korn* he points out the "fundamental inconsistency in providing, on the one hand, that a member who fails to request exclusion shall be *included* in the class and, on the other hand, that a member who fails to file a proof of claim shall be *excluded* from any recovery." 50 F.R.D. at 60. He noted that although it might be appropri-

ate once liability is established to bar those failing to file such claims, to do so at a preliminary stage penalizes those failing to receive notices, unable to locate papers, or incapable of "articulat[ing] their claims with the precision demanded of larger and more sophisticated claimants."

In conclusion, plaintiff's motion that this case proceed as a class action is granted. Defendants' motion to strike reference in the complaint to §§ 5 and 12 of the Securities Act and § 18 of the Securities Exchange Act is also granted. Two subclasses shall be designated, one consisting of those possessing a claim under § 11 of the Securities Act, the other of those possessing a claim under § 10(b) of the Securities Exchange Act. Plaintiff shall bear the cost of individual notice by first class mail; such notice shall include a proof of claim form.

The parties are directed to settle. an order embodying a proposed class notice and proof of claim form. Such order is to be submitted within 20 days of the filing of this opinion.

So ordered.